## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| MORT KELLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  6:16-cv-01875-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION</u>[1]

Plaintiff Mort Kelley appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  (Doc. 1).  Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons stated below, this matter is due to be remanded to the Commissioner.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision.  (*See* R. 24, 26).  Plaintiff has a high school education and speaks English.  (R. 24).  Plaintiff's past work experience includes work as a

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 5).

construction supervisor and construction manager. (R. 24). Plaintiff alleges a disability onset of August 2, 2013, due to mental state issues, short term memory problems, high blood pressure, ear cysts, and problems with his left arm, left elbow, and right shoulder. (R. 225).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. 16).  At step two, the ALJ found Plaintiff suffered from the following severe impairments: generalized anxiety disorder; major depressive disorder; adjustment disorder; obesity; and status post open reduction and internal fixation of the left upper extremity.  (R. 16-17).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 17-19). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following exertional and non-exertional limitations:

> [T]he claimant is able to occasionally use left non-dominant hand controls. He can frequently reach overhead as well as in all other directions with his right dominant hand. He can reach in all other directions with his left non-dominant hand occasionally. He can frequently handle, finger and feel with his left non-dominant hand. He can frequently climb ramps and stairs but never climb ladders or scaffolds. He can frequently balance, stoop, crouch, kneel, and crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. He can tolerate moderate noise in the workplace. The undersigned further finds that the claimant could perform routine and repetitive tasks and make simple work related decisions. He could do simple routine repetitive tasks but would be unable to do detailed or complex tasks. He is able to make simple, routine work-related decisions. He could have occasional interaction with the general public and co-workers and could maintain frequent interaction with supervisors. He would be able to accept constructive non-confrontational criticism, work effectively alone or in secluded work areas or environments and would be able to accept changes in the work place setting if introduced gradually and infrequently. He would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work. In addition to normal workday breaks, he would be off-task 5% of an 8-hour workday (non-consecutive minutes).

(R. 19-20).

At step four, the ALJ determined Plaintiff was unable to perform past relevant work. (R. 24). Because the Plaintiff's RFC did not allow for the full range of medium work, the ALJ relied on the testimony of a vocational expert ("VE") in finding a significant number of jobs in the national economy Plaintiff could perform. (R. 25). The ALJ concluded by finding Plaintiff was not disabled. (R. 25-26).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers

to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff argues the Commissioner's decision should be reversed and benefits should be awarded because the ALJ's decision: (1) was not based on substantial evidence; (2) erred in its assessment of Plaintiff's credibility; and (3) erred by

failing to consider whether Plaintiff is disabled under 12.05(C).[2]  (Doc. 9 at 13).

Plaintiff's arguments focus solely on the ALJ's conclusions regarding Plaintiff's

mental impairments.  (*See generally* Doc. 9).  Accordingly, this opinion is limited

to consideration of the ALJ's conclusions regarding Plaintiff's mental impairments.

The timing of Plaintiff's alleged disability onset—August 2, 2013—suggests

it principally was triggered by a psychotic episode.[3]  On August 5, 2013, Plaintiff

was admitted to Walker Baptist Medical Center under a court order; he was

experiencing an altered mental state and exhibited suicidal and homicidal ideation,

as well as evidence of decompensation.  (R. 265, 310).  Plaintiff's altered mental

state began on August 2, 2013, but was noted to be a "recurrent problem."  (R.

266).  On admission, Plaintiff made "bizarre statements," including that he knew

"Jesus is under the stairwell."  (R. 265).  Plaintiff's brother and then-wife reported

he had been psychotic, making "increased references to God and Satan, [and

considering] committing suicide."  (R. 266).  On admission, Plaintiff demonstrated:

(1) an anxious mood; (2) paranoid and delusional thought content; (3) impaired

cognition and memory; (4) inappropriate judgement; and (5) homicidal and

---

[2] The Commissioner construed Plaintiff's arguments in this regard as alleging Plaintiff should
have been found disabled under Listing 12.05 for intellectual disorder.  (Doc. 10 at 14 n.14).
The record is insufficiently developed to determine whether Plaintiff met this listing.  Because
this matter will be remanded, the Commissioner may further evaluate the applicability of Listing
12.05.

[3] It appears this was the last of several psychotic or dissociative episodes Plaintiff experienced.
(R. 266).

suicidal ideation. (*See* R. 268). Plaintiff was admitted to inpatient psychiatric care at Walker Baptist, where he stated the admitting doctor was Satan because he was wearing black clothing. (*See* R. 265, 268).

Plaintiff was subsequently committed to the State Department of Mental Health and transferred to North Alabama Regional Hospital for treatment, where he was under observation "for safety." (R. 306-07, 310). Plaintiff was discharged on September 13, 2013. (R. 306). Following discharge, Plaintiff initially lived with his brother. (R. 307-08). Plaintiff and his then-wife subsequently divorced. (*See* Doc. 9 at 28).

The records from Plaintiff's involuntary psychiatric hospitalization indicate opioid addiction and/or poly-substance abuse contributed to his mental impairment. (*See, e.g.*, R. 265). Years prior to his hospitalization, Plaintiff was prescribed opiate painkillers following a severe arm fracture when he fell from a scaffold at work; he subsequently became addicted to painkillers. (R. 47). Plaintiff still suffers from frequent pain due to his arm injury. (*Id.*). At the hearing, Plaintiff testified he was undergoing Suboxone treatment and had not taken any opiate painkillers since early 2013. (*Id.*). The record contains treatment notes from MedplexMD, a Suboxone clinic, documenting Plaintiff's treatment from April 11, 2013, through the date of the hearing. (R. 346-79). The MedplexMD records include Plaintiff's statements that Suboxone was effective, variously

reporting 90% to 100% improvement with treatment. (R. 349, 361, 363, 367). During the hearing, Plaintiff testified Suboxone improved his physical activity but had no effect on his mental state. (R. 62).

Prior to his involuntary hospitalization, Plaintiff was a construction manager for heavy industrial projects. (R. 42). He supervised 40 to 100 employees, was responsible for bidding projects and interpreting architectural plans, and made over $100,000 per year. (R. 37, 42-45). Plaintiff testified that since his discharge from North Alabama Regional Hospital, he lived with his bother for a period of time before moving in with his daughter and her family. (R. 39-40). At the time of the hearing, Plaintiff had been living with his daughter for approximately one year. (R. 40). Plaintiff testified he was living with his daughter because he needed her help with simple decision making and relied on her to correct his behavior; he also testified he did not think he should be alone. (R. 54, 59). Plaintiff testified his daughter does not work so she is with Plaintiff "all day long;" she drove Plaintiff to the hearing. (R. 41-42). Plaintiff testified he has a driver's license and drives short distances twice a week to go to the store. (R. 41). Plaintiff testified he limited the frequency and duration of his driving due to nervousness and discomfort caused by exposure to people and traffic. (R. 42).

As to daily activities, Plaintiff testified he gets up and eats breakfast prepared by his daughter. (R. 49). Plaintiff then typically sits on the couch or

watches TV; sometimes he reads the Bible. (*Id.*; R. 51; *see* R. 213). When the ALJ noted Plaintiff appeared "very tan," Plaintiff noted he often spends time in the yard and walks near his daughter's house. (R. 49). Plaintiff testified he gets dressed approximately four days out of a typical week; he spends the entirety of other days in his pajamas. (R. 58). Plaintiff testified that he would be unable to shop for groceries with a list. (*Id.*).

Plaintiff testified he was unable to work due to his nervousness caused by being around people and lingering effects of his psychotic episode. (R. 51-52, 54). Plaintiff further testified his memory and concentration had deteriorated since his hospitalization and that he had difficulty understanding and remembering things he saw on television. (R. 52-53). Plaintiff testified he was prescribed Abilify, Lexapro, Lorazepam, and Trazodone, in addition to Suboxone. (R. 50).[4] Plaintiff was crying as he testified. (R. 57).

The ALJ found Plaintiff's testimony concerning the severity and persistence of his symptoms to be less than fully credible. (R. 22). In making this finding, the ALJ relied on Plaintiff's activities of daily living and the medical record. As to Plaintiff's activities, the ALJ relied on his ability to groom himself, take his medication, watch television, take walks, read the Bible, and drive twice weekly. (*Id.*). As to the medical record, the ALJ found Plaintiff's testimony was

---

[4] The record also indicates Plaintiff was prescribed Ativan. (*E.g.* R. 436).

unsupported by his reports of improvement under Suboxone treatment and the treatment notes from his treating psychiatrist, Dr. Armand Schachter, which the ALJ described as "indicat[ing] that the claimant's mood was stable, and he was feeling better than he had prior to his alleged onset date." (*Id.*).

There are no opinions from treating physicians in the record. Plaintiff has received psychiatric care from Dr. Schachter on an approximately quarterly basis since his 2013 discharge from North Alabama Regional Hospital. (R. 435-451). However, Dr. Schachter refused to provide any opinion regarding Plaintiff's disability. (*See* R. 35). According to Plaintiff's counsel, Dr. Schachter's general policy is to not opine on patients' disability status. (*Id.*).

The ALJ addressed three opinions regarding Plaintiff's mental condition. First, the ALJ addressed the opinions of two consultative examiners—Sharon D. Waltz, Psy.D., and John R. Goff, Ph.D.—each of whom saw Plaintiff one time and evaluated his mental impairments. The ALJ gave partial weight to the opinions of Dr. Waltz and Dr. Goff. (R. 23). The ALJ also addressed the opinion of Angela Register, Ph.D., a state agency psychological consultant. (R. 22-23). Dr. Register did not examine Plaintiff; her opinion was based on Plaintiff's medical records at the time. (*Id.*). Plaintiff gave Dr. Register's opinion substantial weight. (R. 23). These opinions, and the ALJ's analysis of them, are addressed in turn.

Dr. Waltz performed a consultative examination of Plaintiff on January 14, 2014. (R. 329). Dr. Waltz noted Plaintiff: (1) had good eye-contact and adequate concentration; (2) could count backward from twenty and spell the word "world" backwards; (3) could recall objects immediately and after five minutes; and (4) could recite six digits forward and four digits backwards. (R. 330). Dr. Waltz diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe with Psychotic Features," opioid dependence, and antisocial features with a rule out diagnosis of personality disorder, NOS. (R. 331). Dr. Waltz opined Plaintiff had a "severe degree" of mental impairment which restricted his activities, constricted his interests, and negatively affected his ability to relate to others. (R. 331). Dr. Waltz further opined that, with continued treatment and psychiatric care, Plaintiff had "limited to fair" ability to: (1) understand, carry out, and remember work place instructions; and (2) respond appropriately to supervision, co-workers, and work place pressures. (*Id.*). The ALJ afforded Dr. Waltz's opinion partial weight because she conducted her examination prior to "an adjustment in his medication, after which he reported 90-100 percent improvement." (R. 23). Although the ALJ did not cite the evidence he relied upon to show improvement, the Plaintiff's only reports of 90% to 100% improvement appear in the records from MedplexMD, related to his Suboxone treatment.

On January 22, 2014, Dr. Register reviewed Plaintiff's medical records. (R. 87-93). Dr. Register concluded Plaintiff's mental impairments resulted in moderate limitations but opined Plaintiff could: (1) understand, remember, and carry out simple, routine tasks; (2) maintain attention and concentration for at least two hours at a time; (3) maintain a schedule so long as it was not overly strict or demanding; (4) maintain appropriate interactions so long as the workplace required only casual and infrequent contact with coworkers and the general public; (5) travel alone and understand safety issues; and (6) make plans and set goals of an immediate nature. (R. 93). The ALJ afforded Dr. Register's opinion substantial weight. (R. 23). In doing so, the ALJ noted Dr. Register was "familiar with Social Security Administration program requirements." (*Id.*). The ALJ found Dr. Register's opinion was consistent with: (1) Plaintiff's self-reported activities; (2) Dr. Schachter's generally unremarkable treatment notes; (3) Dr. Waltz's findings regarding Plaintiff's memory and concentration; and (4) a notation in a December 11, 2014 treatment record from Plaintiff's primary physician that he denied anxiety, depression, or memory loss. (*Id.*) (citing R. 330, 333, 435-52).

Dr. Goff, a clinical neuro-psychologist, completed his consultative examination on April 13, 2015, following the hearing. (R. 454-62).[5] In addition to reviewing all of Plaintiff's medical records, Dr. Goff administered the Victoria

_____

[5] Plaintiff's brother drove him to the examination. (R. 456).

Symptom Validity Test to assess whether dissimulation was an issue; Dr. Goff concluded Plaintiff did not dissimulate and that his performance was "straightforward." (R. 454-57).

Dr. Goff also administered several objective assessments. The Wechsler Adult Intelligence Scale ("WAIS-IV") revealed Plaintiff had an I.Q. of 67, although Dr. Goff opined Plaintiff's vision may have been causing him to underperform; he opined a score of 75 was probably a better estimate of Plaintiff's I.Q. (R. 457). The Reitan-Indiana Aphasia Screening Test ("RAST") revealed Plaintiff could: (1) read at a fourth grade level; (2) complete credible clock drawings that were distorted but recognizable; and (3) perform simple arithmetic both mentally and on paper. (R. 457-58). The Wide Range Achievement Test ("WRAT-IV") revealed plaintiff could: (1) read at a sixth grade level; (2) perform mathematical calculations at the fourth grade level; and (3) spell at the mid-third grade level, demonstrating functional literacy. (R. 458).

The Personality Assessment Inventory ("PAI") revealed "pretty substantial indications for endorsement of psychopathology" to a degree "usually associated with marked distress," indicating "significant thinking and concentration problems caused by agitation and distress." (*Id.*). Based on the PAI results, Dr. Goff concluded Plaintiff was likely to: (1) be withdrawn and isolated; (2) have few or no close interpersonal relationships; (3) have poor social judgment; (4) experience

difficulty making insignificant decisions; and (5) be socially isolated with limited social skills. (R. 458). The diagnoses suggested by the PAI results included: (1) schizophrenia, undifferentiated type; (2) major depressive disorder, single episode, unspecified; (3) somatization disorder; (4) posttraumatic stress disorder; (5) schizophrenia paranoid type; and (6) the possibility of schizotypal personality disorder. (*Id.*). Dr. Goff also noted that, while the diagnosis for opioid dependence had followed Plaintiff for some time, he did not see any indication of current use. (*Id.*).

Based on his review of the record, objective testing, and examination, Dr. Goff concluded: (1) Plaintiff was "functioning within the borderline range of psychometric intelligence;" (2) cognitive decline could not be ruled out; (3) there were "indications for a distress syndrome with high levels of anxiety and depression;" and (4) Plaintiff's reports of visual hallucinations were credible. (R. 459). Dr. Goff diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe with Psychotic Features Rule out Cognitive Disorder, NOS (Decline)," and "Borderline Intellectual Functioning." (*Id.*). Dr. Goff opined Plaintiff suffered from "severe impairments because of his psychiatric difficulties." (*Id.*). Dr. Goff further opined Plaintiff would have: (1) marked limitations in carrying out complex instructions, making judgments regarding complex decisions, interacting appropriately with supervisors, and responding to normal workplace situations and

changes in work setting; and (2) moderate limitations in understanding, remembering, and carrying out simple instructions, carrying out complex instructions, and interacting appropriately with coworkers and the public. (R. 460-61).

The ALJ afforded partial weight to Dr. Goff's opinion, finding his opinions regarding Plaintiff's limitations appeared "to have relied almost exclusively on the claimant's representations instead of the longitudinal record." (R. 23). The ALJ noted Dr. Goff's opinion was not supported by Dr. Schachter's clinical notes, which the ALJ described as not revealing complaints of memory loss and "reported 90-100 percent improvement in his condition." (*Id.*). The ALJ appears to have given weight to Dr. Goff's opinion to the extent it concluded Plaintiff could understand, follow, and carry out simple instructions. (*Id.*).

The principal issues on appeal are the ALJ's: (1) refusal to fully credit Plaintiff's testimony; and (2) decision to give partial weight to the opinions of Dr. Goff and Dr. Waltz, while giving substantial weight to Dr. Register's opinion. As explained below, the ALJ's conclusions regarding the credibility of Plaintiff's testimony and the weight afforded to medical source opinions are not supported by substantial evidence. The issues on appeal are addressed in turn, although not in the order presented.

### A.   Opinion Evidence

As previously noted, the record is devoid of opinions from physicians that treated Plaintiff for mental or psychiatric impairments.  The only opinions regarding Plaintiff's mental impairments come in the form of the consultative examinations of Dr. Waltz and Dr. Goff and the opinion of Dr. Register following her review of the then-existing medical record.

An ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . [but] the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985).  The opinions or findings of a non-examining physician are

entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). The rejection of an examining physician's opinion must be supported by substantial evidence. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979 (11th Cir. 2016).

### 1. Dr. Waltz's Opinion

Regarding Dr. Waltz's opinion that Plaintiff had a "significant degree" of mental impairment which limited his ability to work, the ALJ articulated only one reason for affording it partial weight: it preceded the "adjustment in [Plaintiff's] medication, after which he reported 90-100 percent improvement." (R. 23). While the ALJ did not cite the records reflecting Plaintiff's self-reported improvement, the only such records come from MedplexMD, which administered Plaintiff's Suboxone treatment. (R. 349, 361, 363, 376).[6] Plaintiff testified Suboxone helped ease his physical pain but did not have any effect on his mental status. Likewise, the undersigned cannot discern how Plaintiff's self-reported improvement under Suboxone—which is prescribed to treat opioid dependence—has any significant bearing on Plaintiff's mental health status. Accordingly, the ALJ's only stated reason for giving lesser weight to Dr. Waltz's opinion does not constitute substantial evidence.

---

[6] Dr. Register also offered her opinion—to which the ALJ gave substantial weight—prior to Plaintiff's reports of improvement under Suboxone.

## 2. Dr. Goff's Opinion

The ALJ offered several reasons for partially discrediting Dr. Goff's opinion that Plaintiff suffered from "severe impairments because of his psychiatric difficulties" that would cause marked and moderate limitations in a variety of critical workplace functions. (R. 459). Specifically, the ALJ concluded Dr. Goff's opinion was: (1) "almost exclusively" based on Plaintiff's representations during the consultative exam; and (2) unsupported by Dr. Schachter's treatment notes, which the ALJ described as not revealing complaints of memory loss and as reflecting Plaintiff's "reported 90-100 percent improvement in his condition." (R. 23).

To the extent the ALJ's treatment of Dr. Goff's opinion is based on its overreliance on Plaintiff's representations, the Eleventh Circuit has held—albeit in an unpublished opinion—that an ALJ properly rejected an examining physician's opinion that was based on subjective complaints without significant clinical findings. *Ogranaja v. Comm'r of Soc. Sec.,* 186 F. App'x 848, 850 (11th Cir. 2006). The examining psychologist in *Ogranaja* based his opinion on the claimant's subjective statements rather than the psychologist's mental examination showing focused thought content, intact memory, reasonable judgment, average intelligence, and logical thought process. *Id.* at 850.

The instant case is easily distinguishable from *Ogranaja*. Dr. Goff did not base his opinion solely on Plaintiff's subjective statements. Dr. Goff did note Plaintiff provided his own history and found him to be a "credible historian." (R. 456). However, Dr. Goff also summarized the entire medical record before conducting multiple objective assessments. (R. 455-58). Among the tests Dr. Goff administered was the Victoria Symptom Validity Test, which is used to assess whether a patient is dissimulating; Dr. Goff concluded Plaintiff did not dissimulate and that his performance was "straightforward." (R. 457). Dr. Goff also administered the WAIS-IV, RAST, WRAT-IV, and PAI to assess Plaintiff's mental condition. Accordingly, the ALJ's conclusion that Dr. Goff relied "amost exclusively" on Plaintiff's subjective complaints is not supported by substantial evidence.

Next, the ALJ relied on Dr. Schachter's treatment records, finding they did not support Dr. Goff's opinion. (R. 23). The ALJ described Dr. Schachter's records as including Plaintiff's reports of 90-100% improvement in his condition. (*Id*.). Contrary to the ALJ's description of Dr. Schachter's records, they do not include Plaintiff's reports of substantial improvement. The only records reflecting Plaintiff's reports of substantial improvement come from MedplexMD. The Medplex MD records refer to Plaintiff's estimation of his physical improvement under Suboxone treatment. Dr. Schachter's records do not include Plaintiff's

opinion regarding his improvement under psychiatric care, much less the 90-100% improvement described by the ALJ. Accordingly, to the extent the ALJ relied on Dr. Schachter's records as showing Plaintiff's reports of substantial improvement, the decision to give less weight to Dr. Goff's opinion is not supported by substantial evidence. As previously noted, to the extent the ALJ may have intended to cite the MedplexMD records to show improvement in Plaintiff's mental condition, the Suboxone treatment records are not probative of this inquiry.

The ALJ also found Dr. Goff's opinion was inconsistent with Dr. Schachter's treatment records because Dr. Schachter did not note complaints of memory loss. (R. 23). It is true that most of Dr. Schachter's clinical notes do not specifically mention memory loss.[7] However, Dr. Schachter's records are not particularly illuminating and are of limited use. The records consist largely of two-page summaries of Plaintiff's quarterly visits. These visits appear to be aimed at monitoring Plaintiff's psychiatric medications. The records recite Plaintiff's diagnoses of severe, recurrent major depressive disorder and generalized anxiety disorder, as well as his psychiatric prescriptions. (*E.g.* R. 435-444). Dr. Schachter does not appear to have performed any objective testing of Plaintiff. The ALJ was correct in observing Dr. Schachter's records are largely silent as to Plaintiff's complaints of memory loss. But, standing alone, the lack of mention of memory

---

[7] The one exception is a note from January 22, 2014, indicating Plaintiff had "fair" memory and concentration. (R. 443).

problems by Dr. Schachter does not provide substantial evidence to discount Dr. Goff's thoroughly supported opinion regarding Plaintiff's myriad mental impairments.

### 3.    Dr. Register's Opinion

As previously noted, Dr. Register rendered her opinion after review of Plaintiff's medical records; she did not examine Plaintiff.  Dr. Register's was the only opinion the ALJ afforded substantial weight.[8]  However, the opinions of non-examining state agency consultants "do not constitute substantial evidence from which to base a decision."  *Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311, 1330–31 (M.D. Fla. 2010) (citing *Spencer ex rel. Spencer v. Heckler,* 765 F.2d 1090, 1094 (11th Cir. 1985); *see Broughton*, 776 F.2d at 962.  Accordingly, the court finds that the ALJ's decision to give substantial weight to Dr. Register's opinion is not supported by substantial evidence.

### B.    <u>Plaintiff's Testimony Regarding Mental Impairments</u>

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon

---

[8] The ALJ concluded Dr. Register's opinion was consistent with Plaintiff's report of daily activities and with clinical notes.  (R. 23).  The subsequent section's discussion regarding Plaintiff's report of daily activities also applies to Dr. Register's opinion.  As to treatment records, the ALJ relied largely on Dr. Schachter's clinical notes.  To the extent the ALJ relied on Dr. Schachter's clinical notes, these notes are not particularly probative, as previously discussed.

pain and other subjective symptoms, including mental impairments, the Eleventh

Circuit's pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other symptoms].

*Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991)); *see Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 960-61 (11th Cir.

2016). The ALJ is permitted to discredit the claimant's subjective testimony of

pain and other symptoms if he or she articulates explicit and adequate reasons for

doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Here, the ALJ found the Plaintiff's testimony concerning the severity of his

mental impairments was inconsistent with: (1) Plaintiff's report of daily activities;

(2) Plaintiff's reports of significant improvement under Suboxone treatment; and

(3) Dr. Schachter's clinical notes. (R. 22). As previously discussed: (1) Plaintiff's

reports of improvement under Suboxone are not probative of his mental

impairments; and (2) Dr. Schachter's clinical notes are not particularly

illuminating. That leaves Plaintiff's report of daily activities as the only

unaddressed rationale for rejecting Plaintiff's testimony. Specifically, the ALJ

found Plaintiff's testimony that he could not work was undermined by his ability to

groom himself, take his medication, watch television, take walks, read the Bible, and drive twice weekly.  (R. 22).

The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean Plaintiff is not disabled.  *See Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  As another judge sitting in this district has noted:

> Statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. *Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.* It is well established that sporadic or transitory activity does not disprove disability. It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.

*Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1197 (N.D. Ala. 2007) (alterations incorporated) (citations omitted); *see id* ("What counts is the ability to perform as required on a daily basis in the 'sometimes competitive and stressful' environment of the working world;" "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . .").

Here, to the extent the ALJ relied on Plaintiff's reported daily activities to discredit his testimony, the decision was not supported by substantial evidence. Plaintiff's ability to groom himself, watch television, take walks, and occasionally

drive does not support the conclusion that he has "the ability to perform as required on a daily basis" or had the "substantial capacity, psychological stability, and steady attendance" required to sustain employment. *See Stricklin*, 493 F. Supp. 2d at 1197. Moreover, the portions of testimony the ALJ relied upon are tempered by the full range of Plaintiff's testimony, including that he: (1) typically spent three days each week in his pajamas; (2) had been living with family members since his 2013 psychotic episode; and (3) needed assistance from his daughter—who was home with Plaintiff during the days—to make simple decision and correct his behavior. Accordingly, the ALJ's stated reasons for discrediting Plaintiff's testimony are not supported by substantial evidence.

## IV. CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards. Accordingly, the Commissioner's decision is due to be reversed and remanded for further consideration. A separate order will be entered.

**DONE** this 29th day of March, 2018.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE